## WELLS v FRUEHAUF CORPORATION

Docket Nos. 93697, 94579. Submitted April 30, 1987, at Detroit. Decided February 4, 1988.

Mary Wells, the personal representative of the estate of Clifford T. Wells, deceased, brought an action against Fruehauf Corporation, Overhead Door Company, Bejin Trucking Company and RCA Corporation in the Wayne Circuit Court alleging negligence resulting in decedent's death in an automobile accident. The court ordered plaintiff to post a bond as security for costs as to all defendants. When plaintiff did not post the required bond, the court, Sharon Tevis Finch, J., dismissed the complaint, first as to defendants Fruehauf, Overhead and Bejin, and then, in a separate order, as to RCA. Plaintiff appealed each order and the appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. The court rules allow for the requiring of the posting of a bond to secure the payment of costs to an opposing party where the theory of liability is tenuous or the allegations are improbable. The rule also allows for the waiver of bond in the event of financial inability to post bond.

2. The decision to require or waive the posting of a bond is within the discretion of the trial court. It is reviewed only for an abuse of discretion.

3. The court did not abuse its discretion.

Affirmed.

1. Bonds — Security Bonds — Appeal — Court Rules.

The sole function of a court reviewing the resolution of a motion for security for costs is to determine whether the lower court abused its discretion (MCR 2.109).

2. Costs — Security Bonds — Court Rules.

A court rule authorizes a court to require the posting of a

References

Am Jur 2d, Costs §§ 37 *et seq.*

See Index to Annotations under Bonds and Undertakings; Costs of Action.

.

security bond upon the moving party's showing of a substantial reason; poverty alone is not substantial reason to grant a motion ·for security; assertion of a tenuous legal theory of liability may be substantial reason to grant such a motion, as may the improbability of the party's allegations (MCR 2.109).

*Eugene S. Holby* and *Beth A. Stotsky,* for plaintiff.

*Gofrank & Kelman* (by *Thomas J. Killeen, Jr.*), for defendant RCA Corporation.

*Coticcio, Zotter, Sullivan, Molter, Skupin & Turner, P.C.* (by *Jacqueline A. McCormick*), for defendant Fruehauf Corporation.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Dane A. Lupo* and *Ryan A. Husaynu*), for defendant Overhead Door Company.

*Garen, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Millard Becker, Jr.,* and *Mark C. Smiley*) for defendant Bejin Trucking Company.

Before: WALSH, P.J., and WAHLS and J. R. GIDDINGS,* JJ.

PER CURIAM. In these consolidated appeals, Mary Wells, personal representative of the estate of her deceased husband, Clifford T. Wells, appeals from the circuit court orders dismissing her claims for failure to file the $2,500 security bonds which the court had ordered as to each of the four defendants: Fruehauf Corporation, Overhead Door Company doing business as TODCO Corporation, Bejin Trucking Company and RCA Corporation. MCR 2.109.

At approximately 8 A.M. on December 28, 1982, Mr. Wells was killed when the car which he was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

driving ran into the rear of a tractor/trailer rig. At the time of the accident, Mr. Wells was the only person in the car. The tractor/trailer rig was being driven by an employee of defendant Bejin Trucking Company, owner of the tractor. The trailer, which was manufactured by defendant Fruehauf Corporation, was owned by defendant RCA Corporation. Defendant Overhead Door Company manufactured the liftgate which was attached to the trailer.

In her December 13, 1984, complaint, it was plaintiff's asserted theory that, at the time of the accident, dark and rainy weather conditions made it necessary to use headlights and taillights, that the taillights on the tractor/trailer rig had not been on, and that Mr. Wells' car had collided with the unlighted liftgate at the rear of the trailer. She alleged that Fruehauf was negligent in designing the frame, bumper and rear light assemblies of the trailer, Overhead was negligent in designing the liftgate, and RCA and Bejin Trucking were negligent in maintaining the taillight system.

In March 8, 1985, answers to interrogatories, plaintiff, who had married Mr. Wells in 1977, stated that she knew of no persons who had witnessed the accident or who had any knowledge of facts pertaining to the cause of the accident or to the negligence alleged in the complaint. At the time of her answers to interrogatories, plaintiff had not consulted an expert concerning the accident. She stated her theory to be that Mr. Wells had not seen that the tractor/trailer rig was stopped. She acknowledged that he had had a history of blackouts and had taken Dilantin for that condition from June, 1979, to 1982.

In her May 23, 1985, deposition testimony, plaintiff stated that Mr. Wells, sixty-one years old at his death, was on medication for emphysema and

chest congestion at the time of the accident. In September, 1979, he had an episode of becoming "rigid." He had a blackout spell while driving a car in November, 1979. He consulted a doctor after that incident and Dilantin was prescribed. He blacked out at home in June, 1980. Another doctor phased him off Dilantin in 1982. He last took Dilantin in about September, 1982, four months before the accident.

On December 10, 1985, two police officers and the driver of the tractor/trailer rig were deposed. Malcolm Clark, the driver, worked for Bejin Trucking for thirty-eight years before retiring in 1983. The tractor and trailer were in "A-1" mechanical condition at the time of the accident, according to Mr. Clark. He had checked the brakelights, taillights and turn signals the night before the accident. The lights were not obstructed by the liftgate. When he left the RCA warehouse yard, about 1 to 1½ miles from the accident scene, on the morning of the accident, it was "[a] lot more daylight than it was dark." It was raining and the streets were wet. His headlights and taillights were not on; he "could see everything very plainly." The trailer was silver aluminum with a red and white RCA symbol. He had driven behind a similar vehicle before reaching the accident scene and had been able to see its taillights. When Mr. Wells' car ran into his tractor/trailer rig, Mr. Clark was stopped behind that other RCA rig in the lefthand turn lane at the corner of Van Born and Beech Daly in Taylor. His foot was on the brake pedal and his turn signal was on. He did not see the Wells car until he felt the impact. He heard no horn and no screeching of tires.

Taylor police officer Larry Rushing was the first officer to arrive at the scene of the accident. He checked Mr. Wells and found no signs of life. He

took photographs of the scene. The Wells car had run straight into the trailer, not at an angle. Another RCA truck was in front of Clark's truck. There were no skid marks on the pavement. It was raining. Officer Rushing saw nothing on the truck that would have caused the accident. A bystander told Officer Rushing that he had seen the accident and that the car had not slowed down. The car's taillights were not on.

Officer Rushing talked to plaintiff at her home on the morning of the accident. Because there seemed to have been no reason for her husband to have run into the back of the trailer, he asked plaintiff about Mr. Wells' medical history. She told him of his history of blacking out and of the recent termination of his medication.

Police Lieutenant Joseph Tullis was in charge of the traffic department of the Taylor Police Department. He arrived at the scene after Officer Rushing. His deposition testimony corroborated much of Rushing's testimony. He described the impact of the accident as quite severe. Based on twenty-three years of experience investigating traffic accidents, he could think of no reason why Mr. Wells could not have seen the tractor/trailer rig.

In January, 1986, defendants Overhead, Bejin Trucking and Fruehauf filed motions for security for costs.[1] In support of their motions, they focused primarily on the dubious merit of plaintiff's claims.

In response to defendants' motions, plaintiff argued that fact questions remained concerning the weather conditions, the need for lights at the time of the accident, and the design of the equipment. In further support, she filed an affidavit stating:

[1] Fruehauf also filed a motion for summary disposition, MCR 2.116(C)(10), which was denied.

I, Mary Wells, hereby state that I was born on June 16, 1931. I suffer from chronic venus [sic] insufficiency. My highest formal education was through the ninth grade. I am unemployed and unemployable. I am presently receiving Social Security in the amount of Two hundred four ($204.00) dollars per month.

At the February 14, 1986, hearing on the motions of Overhead and Bejin Trucking, the court found that the claims against them were "somewhat slim," and noted that plaintiff's affidavit did not say that she didn't have "some money." The court further noted the absence of an expert witness who would support plaintiff's design defect theory against Overhead, and the weakness in plaintiff's claim that truck driver Clark should have had his taillights on. The court concluded:

All in all, I think that it is reasonable and proper to impose some kind of bond here for security for costs, most especially in view of the fact that the Plaintiff appears to be saying that she would be uncollectible for costs after the lawsuit.

I don't believe it's proper to shield—I don't believe where a lawsuit is clearly being advanced and where monies are being put into it by someone that it's proper to let an uncollectible plaintiff who has a somewhat marginal case hide behind her so-called indigency now in order to put up the bond and then later to be uncollectible for the costs if her case is proven to be unmerited.

I am going to set a bond of $2,500 costs for each of the Defendants. And this should be posted within 30 days or the claim will be dismissed on motion.

Plaintiff's motion for rehearing was denied.

At the March 7, 1986, hearing on Fruehauf's motion for security for costs, plaintiff's attorney

stated that he had obtained an expert witness and that plaintiff was indigent. He told the court that plaintiff's $204 income was supplemental security income (ssi),[2] but no affidavit to that effect was filed.[3] The court noted that, in her affidavit, plaintiff did not say that her Social Security benefits were her only income or assets. The court inquired about no-fault automobile insurance survivor's benefits and life insurance proceeds which plaintiff had received. Plaintiff's attorney did not know the amounts of those receipts. The court granted Fruehauf's motion for security for costs:

> The Court, I believe, should be careful not to use the security costs rule as a hammer to hold over people's heads to prevent them from bringing suits. That should not be the purpose. It may result in that if the cost of bringing the suit or the cost of securing the bond for security for costs makes the matter prohibitive for the plaintiff.
>
> The Court must keep in mind that despite the fact that the defendants are solvent and probably insured and so forth, that they—that is not necessarily just that they should pay huge legal bills to defend non meritorious suits, in order not to interfere with the plaintiff's right to bring a suit if she chooses. So there is a balance to be accomplished.
>
> I believe that this suit, for the reasons I have stated, is extremely marginal, the possibilities for recovery, because I believe there is a substantial question of proximate cause. I'm not sure that this matter would survive a motion for directed verdict, but I can not—I really have no idea how that will go, because I have not heard the facts fleshed out. I've only heard the relative positions of the parties. But it would appear that this is a difficult suit for the Plaintiff. That does not make it any less expensive for the Defendants to defend.
>
> I am not at all convinced that the Plaintiff is

[2] Title XVI of the Social Security Act. 42 USC 1381 *et seq.*

[3] Plaintiff does not state on appeal that she receives ssi.

indigent. I am assuming that she is of modest means.

The affidavit, the fact that she is—the fact that the government gives her Social Security disability does not settle the question in my mind. Apparently, there were some recoveries made after the death. Probably the money has been spent. That's usually it.

I have no idea what the assets are. There is no showing.

I haven't even been told what the cost of this surety bond would be. I don't think—there's no showing to me that she can not post a bond.

I, therefore, am going to, in regard to this Defendant's motion, require that the Plaintiff post a $2,500 cash or surety bond within 30 days or her case may be dismissed as against this Defendant on motion.

In May and June of 1986, Bejin Trucking, Overhead and Fruehauf filed motions to dismiss for failure to post the required security. At the June 13, 1986, hearing on the motions, plaintiff's attorney again stated that plaintiff receives $204 monthly ssi benefits, but no affidavit to that effect was filed. The court granted the motions to dismiss:

The reason that the Court is granting this is for the same reason that I granted the motions to begin with, which is that it appears to me that indigency will not protect a plaintiff who has what appears to be an extremely marginal suit from posting a bond for security for costs.

Further, I don't believe that her inability to post this has ever been shown to my satisfaction. Her income has been discussed. She has never filed an affidavit as to her assets and she has never filed an affidavit as to the lack of any other income.

I tend to believe that she is not in a financial— in a wonderful financial position, regardless of the

fact I don't think the proofs are entirely as strong as counsel's statements. But my feeling is, as I stated before, that these cases against these defendants—I do not see how the plaintiff can sustain these cases without a great deal of difficulty. And I believe that this is a fair instance to allow—to require the posting of security for costs.

What this boils down to is if the plaintiff were to lose these cases, she could not pay the costs of the defendants in defending them. And counsel's statement that taxable costs are only a few hundred dollars, I have not seen borne out recently. Taxable costs are becoming very high in view of the use of expert depositions, et cetera. So for that reason I'm granting those motions.

In response to RCA's June 18, 1986, motion for security for costs, plaintiff filed an affidavit stating:

I, Mary Wells, hereby state that I was born on June 16, 1931. I do not own any real estate. I do not own any furniture and furnishings. My personal clothing is valued at less than Five Hundred and 00/100 ($500.00) Dollars. I own a 1983 Chrysler valued at Six Thousand and 00/100 ($6,000.00) Dollars. I have a checking account with a present balance of Three Hundred Sixty ($360.00) Dollars. I have no savings account of which I am the owner. I suffer from chronic venus [sic] insufficiency. My highest formal education was through the ninth grade. I am unemployed and unemployable. I am presently receiving Social Security in the amount of Two Hundred Four ($204.00) Dollars per month. I am indigent.

The court granted RCA's motion and, with plaintiff's concurrence, immediately entered judgment of dismissal for RCA.

Plaintiff appeals the orders of dismissal as to all defendants. The appeals have been consolidated. We affirm.

MCR 2.109(A) provides in pertinent part:

> On motion of a party against whom a claim has been asserted in a civil action, if it appears reasonable and proper, the court may order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court, or, if the claiming party appeals, by the trial and appellate courts. The court shall determine the amount in its discretion.

Resolution of a motion for security for costs is a matter addressed to the court's discretion; the sole function of a reviewing court is to determine if the lower court abused its discretion. *In re Ford's Estate,* 339 Mich 339, 346; 63 NW2d 417 (1954); *Belfiori v Allis-Chalmers, Inc,* 107 Mich App 595, 600; 309 NW2d 682 (1981).

The court rule authorizes a court to require the posting of a security bond "if it appears reasonable and proper." MCR 2.109(A). In *Gaffier v St Johns Hospital,* 68 Mich App 474, 478; 243 NW2d 20 (1976), this Court stated its belief that a motion for security under this court rule should be granted only upon the moving party's showing of "substantial reason." The plaintiff's poverty alone is not substantial reason to grant a motion for security. *Id.* Assertion of a tenuous legal theory of liability can provide substantial reason to grant such a motion. *Belfiori v Allis-Chalmers, Inc, supra,* p 600. An order to post security for costs can also be appropriate where there is good reason to believe that a party's allegations, although they cannot be summarily dismissed under MCR 2.116, are nonetheless groundless and unwarranted. *Flanagan v General Motors Corp,* 95 Mich App 677, 683; 291 NW2d 166 (1980).

In this case, after reviewing the merits of plaintiff's claims and the probability of difficulty that defendants would experience in collecting taxable costs from plaintiff should they prevail, the judge found that an order for security was reasonable and proper. The judge clearly recognized her discretionary authority to resolve defendants' motions and we find that she did not consider improper factors. We are persuaded of no abuse of discretion.

Relying on MCR 2.109(B)(1), plaintiff urges that the court abused its discretion in requiring the posting of security. That subrule provides:

> Subrule (A) [MCR 2.109(A)] does not apply in the following circumstances:
> (1) The court may allow a party to proceed without furnishing security for costs if the party's pleading states a legitimate claim and the party shows by affidavit that he or she is financially unable to furnish a security bond.

As with the threshold determination of a reasonable and proper basis for imposition of a requirement of the posting of security, the decision to waive security under MCR 2.109(B)(1) is a matter addressed to the sound discretion of the lower court. *Gaffier v St Johns Hospital, supra,* p 478.

This Court discussed the waiver of an otherwise reasonable and proper security bond in *Gaffier v St Johns Hospital, supra,* a $6,000,000 malpractice suit against a hospital and five doctors. The *Gaffier* plaintiff's sole income was a monthly social security check in the amount of $197. This Court found an abuse of discretion in the lower court's failure to waive bond under GCR 1963, 109(1), the predecessor to MCR 2.109(B)(1):

> If the trial court believes that a Rule 109 bond

would be proper absent plaintiff's poverty, he must then assess the indigent plaintiff's financial ability to post bond. In this regard, the rule attempts to balance the right of a poor plaintiff to seek justice with the need of a defendant to have an opportunity for security. In our view, the rule establishes a strong preference for waiver of the bond where the indigent plaintiff's pleadings show a "meritorious claim"—*i.e.,* a legitimate cause of action. In cases where the indigent plaintiff's pleadings show a tenuous legal theory, the plaintiff's interest in free access to the courts becomes less significant when weighed against the defendant's greater need for security. In short, the fulcrum of the rule's balance is the legitimacy of the indigent plaintiff's theory of liability.

This is not to say that legitimacy of the claim will always be determinative. The rule clearly allows for sound trial court discretion. We can imagine few cases, however, where a discreet trial court will require an indigent plaintiff, pleading a valid theory of liability, to post security.

In the present case, assuming *arguendo* that a security bond would have been proper absent plaintiff's poverty, we believe the trial court's failure to waive the bond was an abuse of discretion. Once it was determined that this plaintiff pleaded a legitimate cause of action, an order that this plaintiff post a $2,500 security bond was inappropriate. The security provided to this one defendant was more than plaintiff's yearly social security income. Defendant's motion gave no explanation of the necessity of that sum, nor indicated any particular hardship that would result were the bond to be denied. We cannot bar this plaintiff from the courts because of her poverty. [68 Mich App 478-479.]

MCR 2.109(B)(1) requires both that the party's pleading state a legitimate claim and that the party show by affidavit that he or she is financially unable to furnish a security bond. In this case, the

lower court was never convinced of plaintiff's financial inability to furnish security bonds. Compare *Gaffier v St Johns Hospital, supra,* where the plaintiff's indigency was apparently not disputed.

We review the findings of fact of the lower court for clear error. MCR 2.613(C). We are persuaded of no clear error in the court's finding that plaintiff had failed to satisfy the second requirement of MCR 2.109(B)(1). Plaintiff never filed an affidavit stating that her $204 monthly income is her sole income or that she has no assets other than those listed in her affidavit. The court was never informed of the cost of the security bonds.

As noted, the waiver of a security bond under MCR 2.109(B)(1) is a matter addressed to the discretion of the lower court. In *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959), the Supreme Court discussed the nature of appellate review of discretionary decisions which turn on determinations of fact:

> Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

Under that standard, we are persuaded of no

abuse of the lower court's discretion in denying waiver of security.[4]

Because plaintiff did not comply with the security orders, the court properly ordered dismissal of her claims. *Belfiori v Allis-Chalmers, Inc, supra,* p 601.

Plaintiff argues that it is unfair and inequitable, and violative of equal protection under the United States Constitution, US Const, Am XIV, and the Michigan Constitution, Const 1963, art 1, § 2, to deny her "the right to pursue her claim in the courts." Because plaintiff cites no authority in support of this claim, it is not before this Court and will not be reviewed. *Wojciechowski v General Motors Corp,* 151 Mich App 399, 405; 390 NW2d 727 (1986).

Affirmed.

---

[4] Because plaintiff failed to satisfy the affidavit requirement set forth in MCR 2.109(B)(1), we do not discuss whether her complaint stated "a legitimate claim," thus satisfying the other requirement set forth in the subrule.