*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VERSAN LEWIS SADDLER,

       Plaintiff-Appellant,

v

EVAN ALAN CHEVELA, CITY OF FERNDALE,
and PROGRESSIVE MARATHON INSURANCE
COMPANY,

       Defendants-Appellees.

UNPUBLISHED
November 21, 2023

No. 363198
Oakland Circuit Court
LC No. 2021-191177-NI

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

Plaintiff appeals as of right an order dismissing his complaint alleging first- and third-party claims under the No-Fault Act that was entered after plaintiff failed to post a $25,000 security bond as ordered by the trial court under MCR 2.109(A). We affirm.

## I. BACKGROUND FACTS

On November 26, 2020, plaintiff had been driving his vehicle and was stopped at an intersection to yield the right-of-way to a fire truck which was being operated by defendant Evan Chevela for defendant City of Ferndale. During the course of making a left turn in front of plaintiff's vehicle, the fire truck made contact with the front fender on the driver's side of plaintiff's vehicle. The accident was investigated by the police, for which dash camera video and audio exists, and photographs were taken of plaintiff's vehicle at the scene of the accident. Plaintiff denied being injured and drove his vehicle home.

On November 17, 2021, plaintiff filed this lawsuit. Plaintiff's complaint was amended on February 9, 2022, and alleged negligence and gross negligence claims against Chevela and the City of Ferndale for injuries he purportedly sustained in the accident. Plaintiff also alleged a claim against defendant Progressive Marathon Insurance Company (Progressive), seeking personal injury protection (PIP) benefits which purportedly were wrongly delayed or denied.

-1-

On June 22, 2022, defendants Chevela and the City of Ferndale filed a motion for security costs pursuant to MCR 2.109(A)—and Progressive filed a concurrence with that motion—arguing that plaintiff should be required to file a security bond to continue litigating this lawsuit because his claims were baseless. Defendants argued that the fire truck merely scraped plaintiff's vehicle during the left turn so that a small amount of paint was transferred between the vehicles. As the Michigan State Police Trooper, Stephen James, indicated both in his report and in his deposition, the incident resulted in "extremely minor damage" and probably did not even qualify for a crash report because it was so minimal. And plaintiff indicated to Trooper James, on camera, at the scene after this incident that he was not injured and did not need medical attention. Despite the on-scene investigation which included photographs, plaintiff testified in his deposition that his vehicle was pinned underneath the fire truck, i.e., the mid-section of the fire truck was on top of his vehicle, trapping his vehicle underneath the fire truck. And he claimed that he had a flat tire, a large dent behind the driver's side headlight, and a broken axle—although the photographs taken immediately after the incident do not depict this damage and plaintiff admitted that he drove his vehicle home. Plaintiff also claimed to be severely injured in the accident although he denied injury when asked by Trooper James and did not seek medical treatment for over a month after the incident and the doctor who eventually evaluated plaintiff noted that he had a "low suspicion for injuries." Subsequently, plaintiff underwent two insurance medical examinations, one in February 2022 and one in March 2022, and both concluded that plaintiff's symptoms were subjective and there was no evidence that he sustained any traumatic injuries in the accident.

Defendants argued that MCR 2.109(A) allows for a party to request that another party post a security bond when there is a substantial reason for doing so and such reason exists when the case is based on a tenuous legal theory of liability or when the allegations are groundless and unwarranted such as to be unlikely to succeed. Defendants argued that a security bond was proper here because it was unlikely that plaintiff could show a threshold injury let alone that *any* purported injury was caused by a minor scape with the fire truck, and it was clear that his claims about the incident were incredible, i.e., not believable, considering the evidence. Moreover, plaintiff could not establish that defendant Chevela was grossly negligent merely because he scraped the front fender of plaintiff's car while turning a corner with a fire truck. Therefore, plaintiff's allegations were groundless and unwarranted and the posting of a security bond was proper considering the evidence and the enormous expense of litigating this matter, including, for example, by retaining experts, deposing medical and other experts, ordering medical records, filing necessary motions, and other expenses. Defendants Chevela and City of Ferndale attached numerous exhibits to their motion, including excerpts of plaintiff's deposition testimony, the police report, dash camera footage, excerpts of Trooper James' deposition testimony, photographs of the fire truck and plaintiff's vehicle, and medical reports and records related to plaintiff.

Plaintiff responded to defendants' motion for security of costs, arguing that plaintiff testified that when the fire truck "was turning it felt as though his entire car was pinned down and trapped under the fire truck and that it broke his axle." And later in the day, his tire went flat. Plaintiff argued that he did not seek medical treatment immediately because the state was under a mandatory lockdown due to the COVID-19 pandemic, but once the mandate was lifted, he sought medical treatment. At that time, it was confirmed that plaintiff had sustained severe injuries in the accident, including injuries to his head, neck, back, and hip. Plaintiff has since undergone two surgeries: first, a cervical discectomy decompression at C5-6 and, second, a left L5-S1 discectomy. He also has been diagnosed with a closed head traumatic brain injury. Plaintiff argued that

defendants had been bullying him and engaging in "gotcha" moments from the beginning of this lawsuit, and even paid "hired guns" to opine that nothing is wrong with him despite his medical treatment and records detailing his injuries. And this motion, plaintiff argued, had the same purpose. However, plaintiff argued, he is destitute and has no money to post security to litigate his claims—which plead valid theories of liability. That is, there was no substantial reason for the trial court to require him to post security because his claims were firmly grounded in MCL 500.3135 (permitting third-party no-fault claims) and MCL 500.3101 (permitting first-party no-fault claims). Moreover, contrary to defendants' argument, plaintiff's claims were not groundless and unwarranted considering the evidence and his documented injuries. Plaintiff argued that defendants' motion should be denied because, as held in *Farleigh v Amalgamated Transit Union, Local 1251*, 199 Mich App 631, 634; 502 NW2d 371 (1993), "security should not be required unless there is a substantial reason for doing so," and no such reason existed in this case. Plaintiff attached numerous exhibits to his responsive brief, including the entirety of his deposition testimony, the police report, excerpts of his vehicle insurance policy, an article about the government lockdown, and medical records.

Defendants filed a reply to plaintiff's response to their motion for security of costs, arguing that plaintiff failed to file an affidavit to support his claim of indigency as required by the court rules, and thus, he should be required to post bond. Regardless, plaintiff's claims were groundless, unwarranted, and unlikely to succeed so even if he filed an affidavit, he should be required to post bond. Plaintiff's claims of bullying, surprise, and trickery were completely baseless, defendants argued, and were designed merely to detract from his blatant dishonesty and exaggerations regarding this incident and his alleged "injuries." In fact, review of plaintiff's medical records reveal that no physician has claimed that this minor incident actually caused any of his purported injuries, which are all based on purely subjective complaints. Clearly, defendants argued, no jury was going to believe plaintiff's "extensive exaggerated injuries resulted from a low-speed scrape with the firetruck." Thus, plaintiff should be ordered to post security to continue this litigation. Defendants filed exhibits in support of their reply, which included a report of plaintiff's neuropsychological examination.

Thereafter, on June 28, 2022, plaintiff filed an affidavit stating that he had been unemployed since the date of the collision and was unable to pay a security bond because he was destitute.

On June 29, 2022, the trial court held oral arguments on defendants' motion for security of costs and the parties argued consistently with their briefs. We note that the trial court questioned plaintiff's counsel about whether she recalled that her client, plaintiff, testified that the fire truck was on top of his car and that he was pinned in the vehicle and counsel responded in the affirmative. The court then asked counsel: "Do you think that if a fire truck was on top of your car, your car would have some significant damage?" Counsel replied: "I would think so but I'm not an expert and our experts have said that it's possible." The court then asked counsel if the pictures showing the damage to plaintiff's car (mere paint transfers) was consistent with a full-sized fire truck being on top of a car the size of plaintiff's car—such that plaintiff claimed to be pinned inside that car— and plaintiff's counsel replied, "I think so." The court then stated that it would take the matter under advisement and issue a written opinion.

On July 8, 2022, the trial court issued its opinion and order granting defendants' motion for security of costs and ordering plaintiff to post bond within 21 days of the date of the order or his complaint would be dismissed. After reciting the underlying facts and evidence, the court noted that: plaintiff's vehicle sustained minimal damage; plaintiff's testimony that the fire truck was on top of his vehicle, pinning him in his vehicle, was inconsistent with the evidence; plaintiff's testimony about his alleged injuries was inconsistent and contradicted by the evidence; and that plaintiff's "medical records strongly indicate a likeliness of subjective rather than objective injury." The trial court concluded that plaintiff's "testimony blatantly reveals serious issues with his legal theory and credibility." The court further held, "the inconsistencies in Plaintiff's deposition testimony, as well as the photographs of his car—both the on-scene photographs and the mechanic's shop photograph—call into question his credibility as well as his ability to successfully prosecute his claims. The Court finds that it will be very difficult for Plaintiff to demonstrate that this accident caused his alleged injuries. . . . Moreover, Defendant Chevela may be entitled to governmental immunity." The court rejected plaintiff's claim that he was being bullied by defendants, noting that defendants were entitled to challenge plaintiff's testimony that was wholly inconsistent with the evidence. Moreover, the court noted, plaintiff failed to provide an affidavit in support of his claim of indigency as required by MCR 2.109(B)(1). Therefore, the trial court granted defendants' motion, requiring plaintiff to post a security bond in the amount of $25,000.

Plaintiff filed a motion for reconsideration arguing that, contrary to the trial court's holding, plaintiff did file an affidavit on the day before the motion hearing attesting to the fact that he is indigent.

On August 24, 2022, the trial court issued its opinion and order denying plaintiff's motion for reconsideration, noting that plaintiff's affidavit was not attached to his response to defendants' motion but instead was filed on the afternoon before the hearing and was not brought to the court's attention during oral argument; thus, the court was unaware of it. In any case, the court held, even if it had been aware of the affidavit, its ruling would not have been changed. The affidavit merely contained conclusory statements that plaintiff is unemployed and indigent, and he failed to state a legitimate claim as required under MCR 2.109(B)(1). Therefore, plaintiff was ordered to post the security bond or his complaint would be dismissed.

Plaintiff then filed an emergency motion for clarification of the court's opinion and order entered August 24, 2022. Plaintiff requested the court to clarify whether both the first-party and third-party claims set forth in his complaint were dismissed. Plaintiff argued that his PIP claim should not be dismissed because it was based on a valid insurance policy that was in force at the time of this incident. And he submitted medical documentation substantiating his claim of injuries arising from the accident; thus, he stated a cause of action for first-party no-fault benefits.

Defendant Progressive filed a response to plaintiff's emergency motion, arguing that plaintiff would be unable to establish that this minor traffic incident caused him any injury, and further, any medical problems he claimed to have were merely subjective—and not objective—in nature. Defendant further stated: "[G]iven the subjective nature of Plaintiff's injuries as supported by multiple independent medical examiners, Plaintiff's dishonest deposition testimony, dash camera footage of Plaintiff joking at the accident scene, evidence of malingering throughout testing by [the neuropsychologist], Plaintiff will not be able to convince a jury that his exaggerated

injuries resulted from a low-speed bump by a firetruck." Accordingly, the trial court properly ordered plaintiff to post a security bond in this case.

On September 13, 2022, the trial court entered an order denying plaintiff's motion, holding that no clarification was necessary because the court's opinions regarding security of costs relate to plaintiff's entire complaint since his claims arise from the same accident and are grounded in tenuous theories of liability. (Quotation marks and citation omitted.)

On September 15, 2022, the trial court entered an order dismissing plaintiff's complaint and closing the case because plaintiff failed to post a $25,000 security bond with the court within the time ordered.

This appeal by plaintiff followed. Plaintiff argues that the trial court erred by dismissing his first-party and third-party no-fault claims because they were not based on tenuous legal theories. We disagree.

## II. ANALYSIS

### A. STANDARD OF REVIEW

A trial court's decision whether to require a security bond is reviewed for an abuse of discretion. *In re Surety Bond for Costs*, 226 Mich App 321, 331; 573 NW2d 300 (1997). A decision constitutes an abuse of discretion when it falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The trial court's factual assessments of the legitimacy of the claims and a party's financial ability to post bond are reviewed for clear error. *In re Surety Bond*, 226 Mich App at 333. Clear error is shown when the reviewing court is left with a definite and firm conviction that a mistake was made, even if there was evidence to support the finding. *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). The interpretation and application of a court rule is reviewed de novo. *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 133; 624 NW2d 197 (2000).

### B. APPLICABLE LAW

Under the Michigan Court Rules, a motion may be brought by a defendant in a civil action requesting that the trial court require a plaintiff to post a security bond to cover future costs and expenses. MCR 2.109 provides:

> **(A) Motion**. On motion of a party against whom a claim has been asserted in a civil action, if it appears reasonable and proper, the court may order the opposing party to file with the court clerk a bond with surety as required by the court in an amount sufficient to cover all costs and other recoverable expenses that may be awarded by the trial court, or, if the claiming party appeals, by the trial and appellate courts. The court shall determine the amount in its discretion. . . .

> **(B) Exceptions**. Subrule (A) does not apply in the following circumstances:

(1) The court may allow a party to proceed without furnishing security for costs if the party's pleading states a legitimate claim and the party shows by affidavit that he or she is financially unable to furnish a security bond.

MCR 2.109(A)'s phrase "if it appears reasonable and proper," has long been interpreted to require the moving party to show a "substantial reason" warranting the posting of security by the opposing party. *Wells v Fruehauf Corp*, 170 Mich App 326, 335; 428 NW2d 1 (1988), citing *Gaffier v St Johns Hosp*, 68 Mich App 474, 478; 243 NW2d 20 (1976). This Court, in *Wells*, further explained:

> The plaintiff's poverty alone is not substantial reason to grant a motion for security. Assertion of a tenuous legal theory of liability can provide substantial reason to grant such a motion. An order to post security for costs can also be appropriate where there is good reason to believe that a party's allegations, although they cannot be summarily dismissed under MCR 2.116, are nonetheless groundless and unwarranted. [*Wells*, 170 Mich App at 335 (internal citations omitted).]

In other words, in "determining the legitimacy of a claim, a trial court is not strictly limited to considering the plaintiff's legal theory, but may also consider the likelihood of success on that theory." *In re Surety Bond*, 226 Mich App at 333. A court may look to the "demonstrated weakness" of a case, *Farleigh v Amalgamated Transit Union, Local 1251*, 199 Mich App 631, 636; 502 NW2d 371 (1993), and a party's failure to offer evidence in support of his allegations, *In re Surety Bond*, 226 Mich App at 333. In other words, a party may be required to post a security bond when substantial doubt is cast on the merits of their claim, but the proceedings have not yet advanced to a stage where summary dismissal is appropriate. *Hall v Harmony Hills Recreation, Inc*, 186 Mich App 265, 270; 463 NW2d 254 (1990) (citation omitted). MCR 2.109(B) provides an exception to the posting of a security bond and "attempts to balance the right of a poor plaintiff to seek justice with the need of a defendant to have an opportunity for security." *Hall*, 186 Mich App at 271, quoting *Gaffier*, 68 Mich App at 478. However, if the exception does not apply and the court orders a security bond, a party's claims may be dismissed if the security bond is not filed as ordered. *In re Surety Bond*, 226 Mich App at 332.

## C. APPLICATION

The trial court did not abuse its discretion in ordering plaintiff to post a security bond. Considering the evidence submitted by the parties, there was good reason to believe that plaintiff would be unable to establish entitlement to recovery of either first-party PIP benefits or noneconomic damages on his third-party claim because his purported injuries and credibility were seriously questionable and causation was doubtful.

Plaintiff alleged a first-party PIP claim under MCL 500.3105(1), which provides that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle . . . ." "Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident." *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005). "It is not any bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle." *Id*.

Plaintiff also alleged a third-party claim for noneconomic damages under MCL 500.3135(1) which provides for such tort liability "only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." A serious impairment of body function is an objectively manifested impairment of an important body function that affects the person's general ability to lead his normal life. MCL 500.3135(5); *McCormick v Carrier*, 487 Mich 180, 190; 795 NW2d 517 (2010). The purpose of the injury threshold is to bar recovery for noneconomic loss unless the injury sustained in the accident is serious. *Byer v Smith*, 419 Mich 541, 545; 357 NW2d 644 (1984).

Plaintiff did assert claims under recognizable legal theories of liability, i.e., no-fault claims arising from the accident, but the trial court's assessment of those claims as tenuous is not clearly erroneous. In other words, the record evidence demonstrates that plaintiff was involved in a low-impact incident with a fire truck that resulted merely in scuff marks and paint transfers which does not tend to give rise to any bodily injuries, let alone bodily injuries of a serious nature as required to assert first- and third-party no-fault claims. More specifically, Michigan State Trooper Stephen James authored a traffic report which indicated that there were no injuries, plaintiff's airbag had not deployed, and that there was "extremely minor damage" to the vehicles. Trooper James testified in his deposition that no injuries were reported to him and he likely would not have even written a traffic report because of the minor damage involved (primarily paint transfers and scuff marks) except that a report was requested by a party to the incident. The photographs taken of plaintiff's vehicle at the scene of the accident by Trooper James confirm that plaintiff's vehicle sustained almost no damage. Nevertheless, in his deposition plaintiff testified that the fire truck was actually on top of his vehicle and pinned his vehicle under the fire truck, trapping it, as the fire truck made the turn at the intersection. Plaintiff testified that his vehicle was not really drivable, and had both a broken axle and a flat tire, and was leaking fluid, but he drove it home. Although plaintiff initially testified that he told Trooper James he was injured, particularly that his head and neck hurt, plaintiff later testified that he could not remember if he did—after defense counsel advised plaintiff that there was dash cam video of his interaction with the police officer. And plaintiff initially testified that there was a large dent on his fender by the headlight from his car being pinned under the fire truck—although that dent was not in the photographs taken immediately after the accident. Plaintiff later claimed that the dent "could have happened trying to get [the car] home" after the accident, although plaintiff could not explain how that would have happened. The large dent was evident on plaintiff's car in photographs that were taken at some later time and when he took the vehicle to the collision shop allegedly for repair. Eventually plaintiff testified that he did not know how the dent occurred.

And with regard to bodily injuries, Trooper James testified that none of the parties involved in the accident were injured. At his deposition, plaintiff eventually admitted that he did not recall advising the officer that he was injured. And plaintiff did not seek medical treatment for any purported injuries for over a month after the incident—a fact which contradicts a claim of *any* bodily injuries, let alone serious bodily injuries arising from the incident. In fact, the emergency department physician who eventually evaluated plaintiff on December 31, 2020, performed imaging studies (CT scans) which were negative, concluded that there was a "low suspicion for injuries," and discharged plaintiff to home. While plaintiff argued that he had MRIs done later that same day which showed "both a herniated disc as well as a disc bulge at C4-C5 as well as a bulging disc at T6-T7," there is no evidence to correlate these purported findings with the low-impact accident that occurred over a month before this testing. In other words, to the extent these

findings can be related to some kind of accident, plaintiff has failed to demonstrate that they arose from this specific accident that occurred over a month before the testing. Any number of accidents, falls, and traumatic events could have occurred between the time of the low-impact accident with the fire truck and the date in which plaintiff first sought medical attention. While plaintiff argued that his medical providers all referenced the accident on November 26, 2020, that is because it is the only historical information provided to them by plaintiff. Plaintiff provided no physician affidavit or other evidence stating that his purported bodily injuries are serious and arose specifically from the low-impact accident with the fire truck.

In summary, the trial court's conclusion that plaintiff's complaint was based on tenuous theories of liability is not clearly erroneous. A no-fault insurer is only liable to pay PIP benefits to the extent that the claimed benefits are causally connected to an accidental bodily injury arising out of an automobile accident. And noneconomic damages are only permitted if that bodily injury is serious in nature. In this case, plaintiff has failed to present evidence tending to establish his right to recovery under either theory of liability. As the trial court noted, plaintiff's vehicle sustained almost no damage. It was a low-impact accident that did not cause his airbag to deploy. Plaintiff denied injury at the scene and did not seek any medical attention for over a month. Plaintiff's fantastical deposition testimony aside, there is no evidence that the fire truck was on top of plaintiff's small passenger vehicle so that it pinned him inside the vehicle, causing him to sustain the type of serious injuries that he asserted—over a month later—occurred to him.

Further, plaintiff's affidavit in support of his claim of indigency was insufficient to permit the trial court to make reasoned findings about his financial inability to pay the requested security bond. Plaintiff's affidavit provided conclusory statements attesting to his purported unemployment and inability to pay the bond, but failed to recite any financial information such as his assets, income, expenses, financial statements, and the like.[1] See *Wells*, 170 Mich App at 338. Thus, plaintiff did not meet his burden of establishing that he could not afford the bond. See *Quinto v Cross & Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996) (indicating that a conclusory affidavit is insufficient to establish an issue of fact).

Accordingly, in light of the record, the trial court properly exercised its discretion by balancing plaintiff's right to bring his tenuous claims with defendants' rights to security, and determined that requiring plaintiff to post bond was reasonable and proper. See MCR 2.109(A).

---

[1] Attached to plaintiff's emergency motion was a second, newly-filed affidavit in support of his claim of indigency. The trial court had no obligation to consider this untimely offer of proof, nor does it appear that the trial court did so. We therefore also decline to consider it on appeal.

The trial court did not abuse its discretion.  Therefore, when plaintiff failed to file the security bond as ordered, the trial court properly dismissed plaintiff's action.

Affirmed.


/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett